1

2

3

4

5

6

7

8

9

10

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

WILLIAM JACK BARKER and
JAMES ALEXANDER BARKER,

Plaintiffs,

v.

UNITED STATES CITIZENSHIP
AND IMMIGRATION SERVICES;
ALEJANDRO MAYORKAS, in his
Official Capacity, Secretary, U.S.
Department of Homeland Security; UR
MENDOZA JADDOU, in her Official
Capacity, Director, U.S. Citizenship
and Immigration Services; and
ALISSA EMMEL, in her Official
Capacity, Chief, USCIS Immigrant
Investor Program Office,

Defendants.

Case No. 8:23-cv-00597-WLH-DFM

**ORDER RE DEFENDANTS'
MOTION TO DISMISS [21]**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## I.    BACKGROUND

Defendant United States Citizenship and Immigration Services ("USCIS") is the federal agency responsible for, *inter alia*, administering immigrant visa programs. (Compl., Docket No. 1 ¶¶ 10, 12).  Among the programs USCIS runs is the "Immigrant Investor Program," under which foreign nationals may receive "EB-5" visas for making qualifying investments leading to job growth in the United States.  (*Id.* ¶ 16).  The first step in qualifying for an EB-5 visa is filing an I-526 petition.  (*Id.* ¶ 17).  Since March 31, 2020, USCIS has processed pending I-526 petitions according to the "visa availability approach."  (*Id.* ¶¶ 47–48).  Under that approach, instead of processing I-526 petitions on a "first-in, first-out" basis, as it had previously, USCIS "prioritizes petitions connected to individuals from countries where visas are currently available."[1]

Plaintiffs William and Jack Barker are citizens and nationals of the United Kingdom who reside in California and wish to receive lawful permanent residence status through the Immigrant Investor Program.  (*Id.* ¶¶ 1, 6–7).  Plaintiffs both filed I-526 petitions on November 20, 2019.  (*Id.* ¶¶ 6–7).  At the time Plaintiffs filed their petitions, qualifying for an EB-5 visa entailed making an investment of at least $500,000 that resulted in the creation of at least ten jobs for U.S. workers.  (*Id.* ¶¶ 1, 21).  As indicated on their I-526 petitions, both Plaintiffs made qualifying investments of $500,000, which they projected would result in the creation of over 20 jobs.  (*Id.* ¶¶ 1–2, 21–23).

Plaintiffs' I-526 petitions have been awaiting adjudication for over 45 months.  (*Id.* ¶¶ 6–7, 26).  During that time, Plaintiffs have made repeated status inquiries with USCIS, apparently to no avail.  (*Id.* ¶ 27).  Based on information published by USCIS,

---

[1] *See USCIS Adjusts Process for Managing EB-5 Visa Petition Inventory*, UNITED STATES CITIZENSHIP AND IMMIGRATION SERVICES (Jan. 29, 2020) available at https://www.uscis.gov/working-in-the-united-states/permanent-workers/employment-based-immigration-fifth-preference-eb-5/questions-and-answers-eb-5-immigrant-investor-program-visa-availability-approach (last accessed Sept. 8, 2023).

1   Plaintiffs believe that visas are available for their petitions, making them eligible for

2   prioritization under the visa availability approach. (*Id.* ¶ 49). Nevertheless, Plaintiffs

3   claim, USCIS has delayed their petitions as "part of an overall effort … to delay

4   processing times for immigrants seeking benefits." (*Id.* ¶ 37). To support this allegation

5   of a broad scheme, Plaintiffs cite to USCIS statistics showing that "[t]he median

6   processing time for an I-526 petition has … increased by more than 166 percent over

7   the span of only six years," from 16.6 months in 2017 to 44.2 months in 2022, (*Id.* ¶ 34);

8   that "[o]ver this same time period … the number of I-526 petitions received by USCIS

9   steadily declined," from 12,165 petitions in 2017 to 829 petitions in 2022 (*Id.* ¶ 35); and

10  that "the average amount of time required by an employee to process an I-526 petition"

11  has increased by 218% in the past seven years, from 6.5 hours in 2016 to 20.69 hours

12  in 2023, (*Id.* ¶ 44). Plaintiffs also allege that USCIS, which is "primarily a fee-

13  supported agency," (*Id.* ¶ 39), "has the ability to generate fee income and to allocate

14  sufficient resources to meet its own case processing goals," but that it nevertheless

15  "unreasonably fail[s] to do so." (*Id.* ¶ 57).

16      On April 4, 2023, Plaintiffs brought this action against USCIS and three officials

17  charged with administering immigration and naturalization (collectively,

18  "Defendants").[2] (*Id.* ¶¶ 9–11). They allege that USCIS has unreasonably delayed

19  adjudication of their petitions. (*Id.* ¶ 5). They seek a writ of mandamus under the

20  Mandamus Act, 28 U.S.C. § 1361, or, in the alternative, an order under the

21  Administrative Procedure Act ("APA"), 5 U.S.C. § 706, compelling USCIS to

22  adjudicate their I-526 petitions. (*Id.* ¶¶ 77(a)). On July 27, 2023, Defendants moved to

23  dismiss the case under Federal Rule of Civil Procedure 12(b)(6). (Mot. to Dismiss

24  ("Mot."), Docket No. 21).

25

26  _____

    [2] The three Defendants sued in their official capacities are Alejandro Mayorkas,
27  Secretary of the U.S. Department of Homeland Security; Ur Mendoza Jaddou,
    Director of USCIS; and Alissa Emmel, Chief of the USCIS Immigrant Investor
28  Program Office. (Compl. ¶¶ 9-11).

1
2

## II.    LEGAL STANDARD

Under Rule 12(b)(6), a party may move to dismiss a cause of action for failure to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  A complaint may be dismissed for failure to state a claim for one of two reasons: (1) lack of a cognizable legal theory; or (2) insufficient facts under a cognizable legal theory.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* The complaint need not include detailed factual allegations, but it must provide more than just a "formulaic recitation of the elements of a cause of action."  *Twombly* at 555.

In evaluating a motion to dismiss, the court must construe the complaint in the light most favorable to the plaintiff, accept all allegations of material fact as true, and draw all reasonable inferences from well-pleaded factual allegations.  *Gompper v. VISX, Inc.*, 298 F.3d 893, 896 (9th Cir. 2002).  The court is not required to accept as true legal conclusions couched as factual allegations.  *See Iqbal*, 556 U.S. at 678.

## III.    DISCUSSION

Plaintiffs seek relief in the form of a writ of mandamus or, in the alternative, an order under the APA.  (Compl. ¶¶ 77 (a)–(b)).  "Because mandamus relief and relief under the APA are in essence the same, when a complaint seeks relief under the Mandamus Act and the APA and there is an adequate remedy under the APA, we may elect to analyze the APA claim only."  *Vaz v. Neal*, 33 F.4th 1131, 1135 (9th Cir. 2022) (quotations omitted) (citing *R.T. Vanderbilt Co. v. Babbitt*, 113 F.3d 1061, 1065 (9th Cir. 1997)).  The Court therefore analyzes only the APA claim.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### A.    Administrative Procedure Act

Under the APA, a reviewing court may "compel agency action unlawfully withheld or unreasonably delayed."  5 U.S.C. § 706.  To determine whether agency delays are unreasonable under the APA, the Ninth Circuit has adopted the "*TRAC*" factors—the six-factor balancing test from *Telecommunications Research & Action Center v. FCC*, 750 F.2d 70, 79–80 (D.C. Cir. 1984).  *See, e.g.*, *Vaz*, 33 F.4th at 1137.  The factors are:

> (1) the time agencies take to make decisions must be governed by a "rule of reason[]";
> (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason;
> (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake;
> (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority;
> (5) the court should also take into account the nature and extent of the interests prejudiced by delay; and
> (6) the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is "unreasonably delayed."

*TRAC*, 750 F.2d at 80 (citations and quotation omitted).

### 1.    *First* TRAC *Factor*

The first *TRAC* factor—whether the time it takes for an agency to make decisions is governed by a "rule of reason"—is the "most important" factor.  *Vaz*, 33 F.4th at 1138 (quoting *In re A Cmty. Voice*, 878 F.3d 779, 786 (9th Cir. 2017)).  Here, Plaintiffs adequately plead that the time it takes USCIS to process EB-5 applications—including their own I-526 petitions—is not governed by a rule of reason.

As Defendants point out, "all of the district courts that have considered [the] question have concluded that the visa availability approach satisfies the rule of reason." (Mot. at 12 (quoting *Jain v. Renaud*, et al., No. 21-cv-03115-VKD, 2021 WL 2458356, at *4 (N.D. Cal. June 16, 2021)).  Rather than taking issue with the visa availability

approach itself, however, Plaintiffs argue that that approach does not explain the declining rate at which USCIS processes EB-5 applications.  In particular, it does not explain why, according to USCIS's own statistics, "the average amount of time required by an employee to process an I-526 petition" has increased by 218% in the past seven years, from 6.5 hours in 2016 to 20.69 hours in 2023.  (Compl. ¶ 44).  At this stage, Plaintiffs have done enough to plausibly allege "USCIS's delays in processing Plaintiffs' petitions is part of an overall effort on the part of Defendants to delay processing times for immigrants seeking benefits," rather than a reasonable side effect of the visa availability approach.  (*Id.* ¶ 37).

Defendants argue that Plaintiffs' allegations that processing times for I-526 petitions have slowed "does not give rise to a plausible inference that Defendants are not following the rule of reason, or that no rule of reason exists," but rather indicates "increasing resource constraints."  (Reply in Supp. of Mot. to Dismiss ("Reply"), Docket No. 28 at 3–4).  The Complaint, however, also alleges that if USCIS is in fact short of resources, it is the result of its own failure to allocate resources effectively in order to process EB-5 visas.  For example, Plaintiffs allege that USCIS "is permitted to set filing fees for the applications and petitions it adjudicates," (Compl. ¶ 40), and "has the ability to generate fee income and to allocate sufficient resources to meet its own case processing goals," but that it nevertheless "unreasonably fail[s] to do so."  (*Id.* ¶ 57).

Regardless, the underlying reason for the slowdown is a factual question that cannot be resolved on a motion to dismiss.  At this phase, the Court must construe the allegations in the light most favorable to Plaintiffs.  In that light, Plaintiffs plausibly allege that the ever-slowing rate at which USCIS processes applications is not justified by the visa availability approach, which dictates only the *order* in which applications are processed, and that this slow rate is not governed by any other rule of reason.  *See, e.g., Fisher v. Renaud*, No. 21-cv-2690-DMG (EX), 2022 WL 3574703, at *5 (C.D.

Cal. July 15, 2022) (plaintiffs' allegations showing rate of I-526 processing "slowed sharply in recent years" "raise[d] questions as to whether USCIS actually processes petitions according to its otherwise reasonable protocol in a reasonable manner," precluding dismissal); *Ferro v. Mayorkas*, No. 23-cv-02033-SB-MRW, 2023 WL 5723245, at *4 (C.D. Cal. Aug. 21, 2023) (denying motion to dismiss APA claim because plaintiff "plausibly challenge[d] USCIS's adherence to its own stated [visa availability] policy"); *Liu v. Mayorkas*, No. 20-cv-654 (CRC), 2021 WL 2115209, at *4 (D.D.C. May 25, 2021) (denying motion to dismiss and finding that "[e]ven if USCIS's ordering system is perfectly rational, the agency could still be liable if it adjudicates each petition at an unjustifiably slow pace, resulting in unreasonably long overall wait times").  Therefore, Plaintiffs have made adequate allegations to tip the first *TRAC* factor in their favor.

> ## 2.     *Second* TRAC *Factor*

Under the second factor, a court must determine whether "Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute." *TRAC*, 750 F.2d at 80.  Congress has set "no explicit timeframe for adjudicating Form I-526 petitions." *Fisher*, 2022 WL 3574703, at *5.  Plaintiffs cite language from 8 U.S.C. § 1571(b)—a statute often cited in cases like this one— which states that "[i]t is the sense of Congress that the processing of an immigration benefit application should be completed not later than 180 days after the initial filing of the application …. "  Ninth Circuit courts have held that this non-mandatory timeline is either of no consequence, *see, e.g.*, *Jain*, 2021 WL 2458356, at *5, or that it "slightly favors plaintiffs," *Khan v. Johnson*, 65 F. Supp. 3d 918, 930 (C.D. Cal. 2014); *see also* *A.C.C.S. v. Nielsen*, No. 18-cv-10759-DMG-MRWX, 2019 WL 7841860, at *5 (C.D. Cal. Sept. 17, 2019) ("The Court is reluctant to place much weight on this factor, but it points in Plaintiffs' favor.")  The Court therefore finds that this factor weighs slightly in favor of Plaintiffs, whose I-526 petitions have been pending for almost four years, or

roughly eight times the 180-day goal. *Cf. Keller Wurtz v. U.S. Citizenship & Immigr. Servs.*, No. 20-cv-2163-JCS, 2020 WL 4673949, at *5 (N.D. Cal. Aug. 12, 2020) (second factor "weigh[ed] in favor of finding the delay[]—approximately four times Congress's stated goal—to be unreasonable").

### 3.    *Third and Fifth* TRAC *Factors*

The third *TRAC* factor concerns the impact of the delay on "human health and welfare," while the fifth factor concerns "the interests prejudiced by delay." *TRAC*, 750 F.2d at 80. Because both factors take into account the effects of the delay on the parties, "[c]ourts presented with similar cases often analyze third and fifth factors together." *Khan*, 65 F. Supp. 3d at 930.

Plaintiffs allege that the delay causes them to "face ongoing uncertainty about their future, which hinders their ability to make career, family, and life choices, and deprives them of the peace of mind of knowing where their future will be." (Compl. ¶ 30(b)). Most of Plaintiffs' specific concerns are economic: they allege that their invested funds "remain at risk," that they are only able to work for a single employer under their current statuses and may not contract for work despite offers from other potential employers, and that they "do not have the ability to utilize U.S. gift tax and estate tax rules available to lawful permanent residents, but are instead subject to full tax on any gifts they give or receive." (*Id.* ¶¶ 30(a), (c)–(d)).

"[A]ny visa necessarily touches on the health and welfare of those seeking to plan their lives in the United States." *Fisher*, 2022 WL 3574703, at *6; *see also Jamal v. Johnson*, No. 2:15-cv-08088-ODW-AFM, 2016 WL 4374773, at *7 (C.D. Cal. Aug. 15, 2016) ("There is little question that, to some extent, Plaintiff's welfare is at stake while he continues to sit in limbo …. "). Plaintiffs' predominantly economic concerns here, however, do not "rise above the ordinary consequences of uncertainty inherent in any visa application process." *Ferro v. Mayorkas*, No. 2:23-cv-02033-SB-MRW, 2023 WL 4291841, at *4 (C.D. Cal. June 16, 2023). These factors therefore weigh very

1  slightly in Plaintiffs' favor. *Cf. Keller Wurtz*, 2020 WL 4673949, at *5 (where plaintiff

2  alleged delay in visa processing prevented her from seeing her elderly father and caused

3  "professional consequences," the third and fifth factors "weigh[ed] in favor of relief,

4  although not as strongly as it might if [plaintiff] faced persecution, medical

5  consequences, or other more severe harm if not granted relief").

6          4.    *Fourth* TRAC *Factor*

7       On the fourth *TRAC* factor, courts must consider "the effect of expediting delayed

8  action on agency activities of a higher or competing priority." *TRAC*, 750 F.2d at 80.

9  In cases concerning visa and asylum applications, the inquiry on this factor is whether

10  compelling USCIS to act would "impose offsetting burdens on equally worthy

11  applicants by putting [the plaintiff] at the head of the queue, thereby moving all others

12  back one space and producing no net gain." *Didban v. Pompeo*, 435 F. Supp. 3d 168,

13  176 (D.D.C. 2020) (cleaned up). This factor weighs in favor of Defendants, as

14  compelling USCIS to adjudicate Plaintiffs' I-526 petitions would only serve to put them

15  at the front of the line.

16       Plaintiffs argue that this case is like *Liu*, in which a District of Columbia district

17  court found the fourth factor was "neutral" because the plaintiff's "core theory of the

18  case" was "not that USCIS assigned him the wrong place in line, but that the line as a

19  whole is moving too slowly due to USCIS's alleged effort to increase processing times."

20  *Liu*, 2021 WL 2115209, at *5; (*see* Opp'n to Mot. to Dismiss ("Opp'n"), Docket No.

21  27 at 16). If that allegation was true, the court said, then it "could potentially provide

22  relief by compelling USCIS to increase its processing rate, thus producing 'net gain'

23  for I-526 petitioners as a group." *Id.* (citing *Didban*, 435 F. Supp. 3d at 176). It is true

24  that, like the plaintiff in *Liu*, Plaintiffs here allege that the "line as a whole is moving

25  unreasonably slowly." (Opp'n at 16 (citing Compl. ¶¶ 34–38, 48)). In their Complaint,

26  though, Plaintiffs merely request that the Court compel USCIS to adjudicate *Plaintiffs'*

27  I-526 petitions within 30 days—not that the Court compel USCIS to adjudicate *all* I-

28

526 petitions more quickly. (Compl. ¶ 77(a)). The result granting Plaintiffs' requested relief would be only to move Plaintiffs up in line at the expense of other applicants.

Plaintiffs also argue that Defendants' position "would require that any petitioner seeking to compel the agency to adjudicate their petition based on an unreasonable delay claim … prove that they are at the head of the line." (Opp'n at 16). This point is well-taken, which is why the Court gives this factor little weight, especially at this stage, where there is no evidence showing Plaintiffs' actual position in line. Nevertheless, this factor weighs in favor of Defendants.

### 5.    *Sixth* TRAC *Factor*

This final factor, which counsels that "the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is 'unreasonably delayed,'" *TRAC*, 750 F.2d at 80, "is not so much a 'factor' as an instruction not to place undue weight on an absence of improper motive," *Keller Wurtz*, 2020 WL 4673949, at *6. Plaintiffs here allege that USCIS's delay "is part of an overall effort on the part of Defendants to delay processing times for immigrants seeking benefits." (Compl. ¶ 37). Plaintiffs' allegations of an ulterior motive render this sixth factor in their favor.

***

In all, five factors—including the first factor, which is the most important—weigh in favor of Plaintiff, and one factor favors Defendants. Plaintiffs plausibly allege that USCIS's processing of I-526 petitions is not solely governed by the visa availability approach. Plaintiffs are entitled to discovery to determine what rule of reason, if any, underlies the I-526 processing rate. Defendants' Motion to Dismiss is therefore **DENIED** on Plaintiffs' APA claim.

### B.    Mandamus Act

Plaintiffs also seek a writ of mandamus under the Mandamus Act, which provides that district courts "have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform

a duty owed to the plaintiff." 28 U.S.C. § 1361.  As discussed above, "when a complaint seeks relief under the Mandamus Act and the APA and there is an adequate remedy under the APA, we may elect to analyze the APA claim only."  *Vaz*, 33 F.4th at 1135. Under both the APA and the Mandamus Act, Plaintiffs seek the same remedy: an order compelling Defendants to adjudicate their I-526 petitions.  (Compl. ¶¶ 77(a)).

Because there is an adequate remedy under the APA, and because the Plaintiffs have stated a claim under the APA, the Court finds that Plaintiffs have also stated a claim for mandamus relief.  *Cf. Fisher*, 2022 WL 3574703, at *6.  Defendants' Motion to Dismiss is **DENIED** as to that claim.

## IV.   CONCLUSION

For the reasons stated above, Defendants' Motion to Dismiss is **DENIED**. Defendants must file an answer within 14 days of the issuance of this Order.

**IT IS SO ORDERED.**

Dated:  September 11, 2023

HON. WESLEY L. HSU
UNITED STATES DISTRICT JUDGE

11